**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**THE ESTATE OF MERCER K. ELLINGTON, by**
**its Executor, PAUL ELLINGTON,**

    Plaintiff/Counterclaim
    Defendant,          **REPORT &**
                    **RECOMMENDATION**

 -against-            09-CV-3359 (KAM) (ALC)

**HARBREW IMPORTS LTD. and ICONIC**
**BRANDS, INC.,**

    Defendants.
-----------------------------------------------------------------X
**HARBREW IMPORTS LTD. and ICONIC**
**BRANDS, INC.,**

    Third-Party Plaintiffs,

 -against-

**STEVEN D. SHAW, JR.; SDS ENTERPRISES**
**LLC; SETH J. WHITE; EGS DEVELOPMENT,**
**INC.; CMG WORLDWIDE, INC.; and "JOHN**
**DOES 1 THROUGH 10,"**

    Third-Party Defendants.
-----------------------------------------------------------------X

**CARTER, UNITED STATES MAGISTRATE JUDGE:**

    Plaintiff/counter-claim Defendant Mercer K. Ellington, by its Executor, Paul Ellington ("Plaintiff" or "Ellington Estate") brings this action against Defendants Harbrew Imports Ltd. and Iconic Brands, Inc. under Sections 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1125(a) and 1125(c), and for related claims of unfair competition and dilution under New York state law, based upon Defendants' unauthorized use of the name DUKE ELLINGTON and other registered trademarks of the Ellington Estate in the marketing and promotion of Defendants' product, "Duke Ellington XO Cognac." On December 3, 2010, the Ellington Estate moved for an entry of

1

default. By order dated March 4, 2011, the Honorable Kiyo A. Matsumoto, United States District Judge, referred to me Plaintiff's motion for default and other related motions to dismiss for failure to prosecute, and requested a report and recommendation. For the reasons set forth below, I respectfully recommend that the Court grant Plaintiff's default motion and award $325,000 in damages and other relief as specified below. I further recommend that the Court grant Plaintiff's and third-party defendant, CMG Worldwide, Inc.'s motion to dismiss under Fed. R. Civ. P. 41(b).

## I. Background

### A. Factual Background

The following facts are drawn from the complaint, which was filed on August 5, 2009. This action arises under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq.* ("the Lanham Act"). (Compl. ¶ 1.) The Estate of Ellington is an estate existing under the laws of Florida. (*Id.* ¶ 3.) Defendants Harbrew Imports Ltd. ("Harbrew") and Iconic Brands, Inc. ("Iconic") are corporations with a principal place of business in the Eastern District of New York. (*Id.* ¶¶ 4-5.) On or around June 10, 2009, Harbrew was acquired by and became a wholly owned subsidiary of the company now named Iconic. (*Id.* ¶ 6.) Defendants are purportedly in the business of "celebrity-branded liquor distribution." (*Id.*) Mercer Ellington was the son of the late Edward Kennedy Ellington, commonly known as Duke Ellington. (*Id.* ¶ 9.) Duke Ellington was, among other things, a famous composer and musician in American pop culture. (*Id.* ¶¶ 10-11.) Duke Ellington died in 1974 and since his death, Plaintiff and Mercer Ellington made substantial efforts to continue his reputation and his legacy. (*Id.* ¶ 12.) For example, Duke Ellington's music appears in popular television programs such as *American Idol* and *The Sopranos*. (*Id.*) The complaint describes the effect of Duke Ellington's legacy and his posthumous popularity. (*Id.* ¶¶ 13-15.) Building on the success of Duke Ellington's legacy, the

2

Estate of Ellington licensed the DUKE ELLINGTON name and its related indicia, including his image and his signature, to a broad category of goods and services, including, but not limited to luxury watches, luxury pens, books, stationary, greeting cards, designer apparel, limited edition prints, calendars, note cards, and posters. (*Id.* ¶ 16.) The Estate of Ellington owns several federal trademark registrations for the name DUKE ELLINGTON. (*Id.* ¶¶ 17-18.) Plaintiff has also filed additional applications based on the use of the name DUKE ELLINGTON in connection with jazz festivals. (*Id.* ¶ 19.)

According to Harbrew's website, Harbrew is a federally licensed importer and distributor of beverages. (*Id.* ¶ 20.) Harbrew specializes in celebrity-branded products, such as "Danny DeVito's Limoncello," a liqueur named after the Italian-American actor and "Bench 5," a scotch named after baseball Hall of Famer Johnny Bench. (*Id.*) It appears that Defendant Iconic is now in the same business as Harbrew, based on Iconic's similar website and the products it promotes. (*Id.* ¶ 21.) Plaintiff alleges that Harbrew once attempted to negotiate with Plaintiff a proposed licensing agreement where Harbrew would manufacture, distribute and promote a DUKE ELLINGTON branded liqueur, but no agreement was reached. (*Id.* ¶ 22.) Subsequently, without Plaintiff's authorization, Harbrew used the trademarked name and signature DUKE ELLINGTON and actively promoted and marketed a liqueur entitled "Duke Ellington XO Cognac." (*Id.* ¶¶ 23-29.) These unauthorized activities appear to have begun in October 2006. (*Id.*)

Plaintiff now brings this suit against Defendants for claims arising under the Lanham Act and New York state law. It seeks relief for unfair competition under 15 U.S.C. § 1125(a) and New York common law, as well as for violations of trademark dilution, under 15 U.S.C. § 1125(c) and N.Y. General Business Law § 360-l. Plaintiff requests injunctive relief, monetary damages, and other such relief as the Court deems proper.

### B. Procedural History

Plaintiff commenced this action on August 5, 2009. On September 24, 2009, Defendants answered the complaint and alleged several counterclaims against Plaintiff. Defendants also brought a third-party complaint against Steven D. Shaw, Jr.; SDS Enterprises LLC; Seth J. White; CMG Worldwide, Inc. ("CMG"); and EGS Development, Inc. Plaintiff answered the counterclaims on October 19, 2009 and filed a supplemental complaint pursuant to Fed. R. Civ. P. 14(a) against CMG. CMG answered the third-party complaint on December 18, 2009 and on January 11, 2010, requested a pre-motion conference to dismiss Plaintiff's supplemental complaint. The Court temporarily denied CMG's request for a pre-motion conference on January 14, 2010.

Defendants' counsel then requested to withdraw from the action and the request was granted on May 28, 2010. Defendants were warned several times that if they failed to obtain new counsel, they were in danger of default because a corporation cannot appear in federal court without legal representation. (Order dated 8/20/10.) Despite Defendants' multiple promises to retain an attorney and the Court's generous grants of extensions, they failed to hire counsel and stopped defending the action. (Orders dated 5/28/10; 6/30/10; 8/20/10; 9/7/10; 9/13/10.) On September 13, 2010, the Court set a briefing schedule for Plaintiff's motion for default judgment and third-party defendants' motion to dismiss the third-party complaint for failure to prosecute. CMG filed its motion to dismiss for failure to prosecute on October 8, 2010 and Plaintiff filed its motion for default judgment on December 3, 2010. Plaintiff also requested that the Court dismiss Defendants' counterclaims for lack of prosecution. The remaining third-party defendants failed to file any motion papers. Plaintiff and CMG served Defendants with copies of the motion and the Court gave Defendants ample time to respond. The Court's records show that

Defendants have not submitted any opposition or response to the motions, nor have they retained counsel.

### II. Motion for Default

#### A. Jurisdiction

As a threshold issue, this Court has jurisdiction over the trademark claims under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. § 1338, which provide jurisdiction to district courts for actions arising out of trademark disputes. *See Phillip Morris USA Inc. v. Marlboro Express*, No. 03–CV–1161, 2005 WL 2076921, *2 (E.D.N.Y. Aug. 26, 2005). The Court has jurisdiction over the Plaintiff's state law claims due to pendent jurisdiction. *Id.*

#### B. Legal Standard

Fed. R. Civ. P. 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Fed. R Civ. P. 55(a) by noting the party's default on the clerk's record of the case. *See id.* After a default has been noted, the Court enters a default judgment against a party that has failed to plead or otherwise defend an action brought against it. *See* Fed. R. Civ. P. 55(b)(2).

It is well-settled that a corporation cannot appear in federal court without legal representation. *See Rowland v. California Men's Colony*, 506 U.S. 194, 201-02, 113 S. Ct. 716, 121 L.Ed.2d 656 (1993); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983). A corporation's failure to retain counsel within a specified period may result in a default judgment against the corporation. *See Eagle Assoc. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991); *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (affirming district court's entry of default where the corporation failed to secure counsel); *Babaev v. Grossman*, No. 03-CV-5076, 2009 WL 81354 (E.D.N.Y. Jan. 9, 2009).

While the defaulting party has essentially admitted to all the allegations found in the complaint, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Rolls–Royce plc v. Rolls–Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). A plaintiff is entitled to all reasonable inferences of the evidence offered to the Court. *See Au Bon Pain Corp.*, 653 F.2d at 65.

### C. Liability

#### 1. Unfair Competition

Section 43(a) of the Lanham Act prohibits "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which.... is likely to cause confusion…" 15 U.S.C. § 1125(a)(1)(A). A party establishes liability under Section 43(a) of the Lanham Act if it can demonstrate "(1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are 'likely to cause confusion.'" *Phillip Morris*, 2005 WL 2076921, at *4 (quoting *Arrow Fastener v. Stanley Works*, 59 F.3d 384, 390 (2d Cir. 1995)). Unfair competition claims under New York common law are governed generally by the same standards as Section 43(a) of the Lanham Act, except the common law requires a showing of bad faith or intent. *See Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997); *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008).

In this case, Plaintiff has alleged sufficient facts in the complaint to establish liability for unfair competition, both under federal and state law. Plaintiff has alleged that it owns several valid trademark registrations for the name DUKE ELLINGTON. (Compl. ¶ 17.) The registrations of these marks with the United States Patent and Trademark Office constitute

"prima facie evidence that the mark[s] [are] registered and valid, … that the registrant owns the mark[s], and that the registrant has the exclusive right to use the mark[s] in commerce." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999); *accord* 15 U.S.C. § 1057(b). Plaintiff also has sufficiently alleged the necessary element of likelihood of confusion as follows: (1) Defendants marketed a liqueur bearing the name "Duke Ellington XO Cognac"; (2) Defendants adopted the identical marks owned by Plaintiff; (3) there were several websites that promoted the liqueur and advertised the name and signature of DUKE ELLINGTON as reasons to purchase the liqueur; (4) these websites referred to the famous composer Duke Ellington during the promotion of the liqueur; (5) there are several press releases about Duke Ellington XO Cognac; (6) several websites listed "Steve Shaw at Harbrew Imports" as the contact person for purchases of the Duke Ellington XO Cognac; and (7) Defendants used these trademarks without authorization. (Compl. ¶¶ 23-29.)

Further, Plaintiff has demonstrated the necessary element of bad faith for the claim of unfair competition under N.Y. law in part because Plaintiff did try to enter into a licensing agreement with Defendants regarding the DUKE ELLINGTON trademarks, but such negotiations failed. (Compl. ¶ 22; Decl. of Richard J.J. Scarola, dated June 15, 2011 "Scarola Decl." ¶ 4.) However, despite the lack of authorization, Defendants used the trademarks. Moreover, Defendants did appear in the instant matter, temporarily defended the action, brought in additional parties to the lawsuit, promised to secure counsel, but then ceased participation. Because Defendants have stopped contesting the allegations in the complaint, Plaintiff's claims are deemed to be admitted for purposes of liability. Accordingly, I find that Defendants are liable for violations of unfair competition both under Section 43(a) of the Lanham Act and under New York common law.

## 2. Trademark Dilution

The Federal Trademark Dilution Act of 1995 ("FTDA"), as amended effective October 6, 2006 by the Trademark Dilution Revision Act ("TDRA"), "entitles the owner of a famous, distinctive mark to an injunction against the user of a mark that is 'likely to cause dilution' of the famous mark." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765, 766 (2d Cir. 2007) (citing 15 U.S.C. § 1125(c)(1)). To establish a violation of the Act, a plaintiff must show that: (1) its mark is famous; (2) the defendant's use of the mark is made in commerce; (3) the defendant used the mark after the mark was famous; and (4) the defendant's use of the mark is likely to dilute the quality of the mark by blurring or tarnishment. *See Gap, Inc. v. G.A.P. Adventures Inc.*, No. 07-CV-9614, 2011 WL 2946384, at *16 (S.D.N.Y. Jun. 24, 2011); *Pan American World Airways, Inc. v. Flight 001, Inc.*, No. 06-CV-14442, 2007 WL 2040588, at *18 (S.D.N.Y. Jul. 13, 2007). Section 360–l of New York's General Business Law provides a plaintiff with injunctive relief in cases where there is a "[l]ikelihood ... of dilution of the distinctive quality of a mark or trade name." N.Y. Gen. Bus. Law § 360–l. To prove a section 360–l dilution claim, a plaintiff must show that it owns a distinctive mark and a likelihood of dilution. *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, No. 00-CV-5304, 2004 WL 896952, at *8 (E.D.N.Y. Mar. 26, 2004) (citing *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 506 (2d Cir. 1996)).

Whether a mark or trade name is likely to cause dilution by blurring depends on factors including the similarity between the mark and the famous mark, the distinctiveness and degree of recognition of the famous mark, and whether the user of the mark or trade name intended to create an association with the famous mark. 15 U.S.C. § 1125(c)(2)(B). The record here plainly shows that the Defendants' continued unauthorized use of the actual DUKE ELLINGTON marks creates a risk of such dilution by blurring. The complaint alleges that Plaintiff owned valid

marks, those marks are famous, and Defendants used those marks, in commerce and without authorization, after the marks became famous to market and promote their product. Further, the use of the marks hurt Plaintiff's goodwill and reputation and eroded the commercial appeal of the marks. (Compl. ¶ 43.)

### D. Damages

The Estate of Ellington requests actual damages of $150,000, plus attorney's fees and costs of $174,574.56, or, in the alternative, statutory damages in the amount of $325,000. (Pl. Supp. Mot. 7.) Plaintiff also requests permanent injunctive relief and the turnover of infringing goods.

A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages. *See Finkel v. Romanowicz*, 577 F.3d 79, 83 n. 6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). After assessing liability, the Court must then conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). In conducting an inquiry, the Court need not hold a hearing "as long as it [has] ensured that there [is] a basis for the damages specified in the default judgment." *Id.* The Court may rely on affidavits or documentary evidence when evaluating the fairness of the damages requested. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Chun Jie Yin v. Kim*, No. 07-CV-1236, 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008) (collecting cases).

#### 1. Actual Damages

Section 35(a) of the Lanham Act provides for monetary relief and attorney's fees in favor of a plaintiff who has successfully established a trademark violation. 15 U.S.C. § 1117. Under the statute, a plaintiff is entitled, subject to the principles of equity, to recover: (1) the

defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. 15 U.S.C. § 1117(a). In order for the Court to assess profits, a plaintiff must prove a defendant's sales. *Id*. Here, this information is unavailable because Defendants have stopped defending the action before completing discovery. Plaintiff submits that the parties did try to negotiate a license to use the DUKE ELLINGTON trademarks in conjunction with a premium cognac beverage. (Scarola Decl. ¶ 4.) These negotiations progressed to the point where Harbrew had identified the particular cognac and the parties began to discuss the promotion of the beverage at trade shows, but the deal was ultimately unsuccessful. (*Id*.) Plaintiff maintains that had Defendants paid Plaintiff for a license, the parties would have agreed to a $50,000 licensing fee and requests that the Court use that figure as an estimate as to the loss of profits. (Pl. Supp. Mot. 12; Scarola Decl. ¶ 4.) While the Court is allowed to "engage in some degree of speculation in computing the amount of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing." *see PPX Enters., Inc. v. Audiofidelity Enters.*, 818 F.2d 266, 271 (2d Cir. 1987), the $50,000 licensing fee does not represent Defendants' profits. It only represents the money Plaintiff would have received had the parties entered into a valid agreement. Accordingly, I decline to grant damages under 15 U.S.C. § 1117(a).

**2. Statutory Damages**

Plaintiff submits that if the Court declines to grant damages under Section 1117(a), it requests $325,000 in speculative damages under 15 U.S.C. § 1117(c). Section 1117(c) provides that:

> the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of –
>
> **(1)** not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

**(2)** if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

"The lack of information regarding defendants' sales and profits make statutory damages particularly appropriate for these kinds of default cases." *Century 21 Real Estate LLC v. Paramount Home Sales, Inc.*, No. 06-CV-2861, 2007 WL 403397, at *4 (E.D.N.Y. Aug. 20, 2007) (collecting cases). "The standard for willfulness is whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Kepner Tregoe, Inc. v. Vroom*, 186 F.3d 283, 299 (2d Cir. 1999). It would be difficult for me to conclude that the infringements were anything but willful. Here, the parties voluntarily engaged in negotiations for Defendants to use properly the DUKE ELLINGTON trademarks in the marketing and promotion of a cognac, but the negotiations were unsuccessful. However, Defendants proceeded to use the trademarks without authorization.

Courts are vested with broad discretion when determining statutory damages under the Lanham Act, in part because of the paucity of statutory guidance. *See Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165-66 (S.D.N.Y. 1999). There is little evidence in the complaint of how extensive or widespread the infringement actually was. Indeed, Defendants were promoting and marketing "Duke Ellington XO Cognac," but there is no evidence as to how many bottles of cognac Defendants actually sold or attempted to sell. On the other hand, Defendants are in the business of selling celebrity-branded liqueurs and their infringement directly relates to their business model. Moreover, "there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the defendant's wrongful activities." *Gucci Am., Inc.*, *v. Gold Ctr. Jewelry*, 997 F.Supp. 399, 404 (S.D.N.Y.), *modified on other grounds*, 997 F.Supp. 409 (S.D.N.Y.), *rev'd on other grounds*, 158 F.3d 631

(2d Cir. 1998). Accordingly, I find that based on the facts alleged in the complaint, $325,000 is an appropriate award for damages.

### 3. Attorney's Fees

Plaintiff chose not to pursue attorney's fees if the Court grants statutory damages. (Pl. Supp. Mot. 15.) I decline to recommend any attorney's fees or costs because I agree with Plaintiff that the recommended statutory damages adequately compensate Plaintiff.

### 4. Injunctive Relief

In addition to damages, Plaintiff also seeks a permanent injunction restraining and enjoining Defendants from using the DUKE ELLINGTON trademarks. (Compl. at wherefore clause ¶ 2.) It also requests a turnover of all, *inter alia*, products bearing the DUKE ELLINGTON trademarks and an affidavit confirming that Defendants have complied with the injunction. (Compl. at wherefore clause ¶¶ 3-4.)

Section 34(a) of the Lanham Act provides Courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a); *see Phillip Morris U.S.A. Inc.*, 2005 WL 2076921 at *5. A permanent injunction is warranted where a party has succeeded on the merits, *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006), and establishes:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Salinger v. Colting*, 607 F.3d 68, 77 (2d. Cir. 2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006)); *see also U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, --- F. Supp. 2d ----, No. 09-CV-9476, 2011 WL 1842980, at *19-20

(S.D.N.Y. May 13, 2011) (reasoning that "*Salinger* suggest that [trademark infringement] cases should be analyzed under the standards for injunctive relief articulated by the Supreme Court in *eBay Inc.*").

Plaintiff has already prevailed on the merits of the case. Furthermore, "proof of likelihood of confusion establishes both likelihood of success on the merits and irreparable harm." *Brennan's Inc. Brennan's Rest.*, 360 F.3d 137, 142 (2d Cir. 1997). The monetary damages that I recommend are inadequate to compensate for the injury. If Defendants are allowed to continue their use of Plaintiff's marks, it may adversely affect Plaintiff's business dealings and future negotiations in ways that may be difficult to quantify. Without an injunction, Defendants may feel that they are free to continue using the marks once they have paid the $325,000 in damages. Balancing the relative hardships also favors granting Plaintiff a permanent injunction. Absent injunctive relief, Defendants may continue using the marks without authorization and Plaintiff will have to expend further resources to stop the infringement. Further, any harm to Defendants would not outweigh the irreparable harm and damage to Plaintiff should they continue to disobey the law. An injunction will not prevent Defendants from continuing to engage in their business of distributing celebrity-branded liqueur nor does it stop them from selling the particular cognac. The injunction would only prohibit them from selling the cognac using the name and signature that infringes on Plaintiff's mark. They could market the cognac under a different name. In addition, the public interest would benefit from the injunction because it would protect the public from deception. *See Unilever Supply Chain, Inc. v. I & I Wholesale Food Inc.*, No. 10-CV-1077, 2011 WL 1113491, at *6 (E.D.N.Y. Feb. 17, 2011); *New York City Triathlon LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

Moreover, under Section 1125(c), the owner of a distinctive famous mark is entitled, subject to the principles of equity, to an injunction against anyone who uses the mark in a way that is likely to cause "dilution by blurring" of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. 15 U.S.C. § 1125(c)(1). Accordingly, I find that a permanent injunction as described in Plaintiff's complaint is appropriate. I also find appropriate the relief sought in paragraphs 3-4 of the complaint's wherefore clause, i.e., the turnover of products bearing the DUKE ELLINGTON marks and an affidavit confirming compliance with the Court's order.

### III. Motion to Dismiss for Failure to Prosecute

Plaintiff moves to dismiss all counterclaims asserted by Defendants and third-party Defendant CMG moves to dismiss the third-party complaint against it under Fed. R. Civ. P. 41. The remaining third-party defendants have failed to file a motion despite the Court's September 13, 2010 order. Fed. R. Civ. P. 41(b) provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule -except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - operates as an adjudication on the merits.

Rule 41(c) provides that Rule 41 "applies to a dismissal of any counterclaim, crossclaim, or third-party claim." *See also Sea-Land Service, Inc. v. Banca De Republica De Dominica*, 697 F.Supp. 253, 260 (E.D. La. 1988) (using Fed. R. Civ. P. 41(b) to dismiss the defendant's counterclaims and third-party complaint).

Dismissal under Rule 41(b) involves consideration of five factors: (1) the duration of Defendants' failure to comply with Court orders or failure to prosecute; (2) notice to Defendants that failure to comply or continued delay would result in dismissal if its counterclaims and third-party complaint; (3) possible prejudice to Plaintiff and CMG; (4) the balance between the interest

14

of managing the Court's docket and the Defendants' right to be heard; and (5) consideration of lesser sanctions. *See Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193–94 (2d Cir. 1999); *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996); *Worytko v. County of Suffolk*, No. 03–CV-4767, 2009 WL 1228236, at *3 (E.D.N.Y. April 30, 2009); *Wills v. Constant*, No. 04–CV-4454, 2008 WL 314393, at *2 (E.D.N.Y. Feb. 4, 2009). No single factor is dispositive. *See Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

All five factors favor dismissal. It is apparent that Defendants have stopped prosecuting their counterclaims and their third-party complaint. Despite repeated Court orders and promises from Defendants, they have not retained counsel or continued their participation in this action. They have been served with the motions and chose not to submit a response. Accordingly, I respectfully recommend that the Court grant Plaintiff's and CMG's motions to dismiss. Further, I recommend that the third-party complaint be dismissed against the remaining third-party defendants. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991) (The Supreme Court has "recognized that a federal district court has the inherent power to dismiss a case *sua sponte* for failure to prosecute.") (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S. Ct. 1386, 8 L.Ed.2d 734 (1962)).

**IV.     Conclusion**

For the foregoing reasons, I respectfully recommend that the Court grant Plaintiff's motion for a default judgment and award statutory damages of $325,000 under 15 U.S.C. § 1117(c). I also recommend that the Court grant the permanent injunction and other relief cited in paragraphs 2-4 of the complaint's wherefore clause. Plaintiff should submit a proposed order of judgment setting forth the relief granted. Further, I recommend that Defendants' counterclaims and third-party complaint as to all third-party defendants be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 6 and 72 of the Fed. R. Civ. P., the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation on ECF.  Extensions of time to file objections should be directed to Judge Matsumoto.  Failure to file timely objections will preclude appellate review of any order of judgment that will be entered.  Counsel for Plaintiff shall serve a copy of this Report and Recommendation on Defendants by certified mail, within three days of receipt, and should file proof of such service on ECF.

**SO ORDERED**

**Dated: August 25, 2011**
     **Brooklyn, New York**                                        /s/ ALC
                                                           _____
                                                           **HONORABLE ANDREW L. CARTER, JR.**
                                                           **UNITED STATES MAGISTRATE JUDGE**